## COMMONWEALTH *versus* NATHAN LANG.

On an indictment for selling a lottery ticket, in which it was alleged that the sale was made to H and L, it appeared, that in pursuance of a previous agreement between them to go shares in a lottery ticket, H, in the presence of L, selected the ticket from among a number produced by the defendant at the suggestion of H; that H and L paid their respective shares of the price, L laying his money down on the counter; that H kept the ticket, with the consent of L, till the drawing of the lottery, when, the ticket having drawn a prize of $2000, the money so drawn was paid by the defendant to H, who paid over to L his share; and that there had been no communication between H and L on the subject of the ticket from the time of the purchase till they were informed that the ticket had drawn a prize and they received the money. It was *held,* that this evidence proved a *joint sale* of the ticket to H and L according to the allegation in the indictment; and that it was immaterial, whether the identical money advanced by each purchaser, for the ticket, was paid to the defendant, or was received by one, and the payment for the ticket made from his funds.

THIS was an appeal from the Municipal Court, on an indictment against the defendant for selling lottery tickets. There were two counts in the indictment. In the first count he is charged with having, on May 15, 1832, sold the quarter of a lottery ticket to Enoch Hawes and Thomas Lawrence. The second count charges the defendant with having offered for sale the quarter of a lottery ticket.

At the trial, before *Shaw* C. J., it appeared from the testimony of Hawes, that on or about the day alleged in the indictment, Hawes was at work, with Lawrence, in a victualling cellar in Boston; that the defendant came in; that Hawes asked Lawrence if he would go halves with him if he bought a lottery ticket; that Lawrence said he would; that the defendant having produced some tickets, Hawes selected one, and Lawrence agreed to go halves with him in that ticket,

that Hawes paid $1.12½, and Lawrence, an equal sum, which together made up the price of the ticket; that Lawrence put his money on the counter; but the witness could not say, whether he put his also on the counter, and the defendant took up the money of both, or whether the defendant took up any of the money, or whether he (the witness) gave his part of the money to the defendant; that he kept the ticket with the consent of Lawrence, till the lottery was drawn; that a day or two after the purchase, the defendant informed them that the ticket had drawn a prize of $2000; and that they then went with the defendant to one Carter's, where the money drawn as a prize was paid for the ticket.

Lawrence testified, that the defendant produced the ticket upon Hawes's having said something to him about tickets; that Hawes went out, and that while he was absent, he (Lawrence) examined the tickets and selected one, and remarked, at the same time, that " if he was going to purchase a ticket, he should select that one;" that Hawes came in, a few minutes after, and seeing the ticket which he had selected, rejected it and selected another; that the witness paid down his half of the price of the ticket and went about his business; that the witness considered himself as purchasing one half of the ticket of Hawes, and not of the defendant, and that he did not consider himself as having any thing to do with the defendant in the purchase of the ticket; that the money drawn as a prize was paid by Carter to the defendant, and by the defendant to Hawes, who paid over to the witness his share.

There was no evidence of any communication between Hawes and Lawrence on the subject of the ticket, from the time it was delivered by the defendant to the time when he informed them it had drawn a prize.

The jury were instructed, that it was necessary, in order to support the first count, to prove a joint sale to Hawes and Lawrence, and that it would not be sufficient to prove a sale of the ticket to one, though he immediately afterwards sold one half of it to the other; that if there was a previous agreement between Hawes and Lawrence to go shares equally in a ticket to be bought, and Hawes bought the ticket in pursuance of that agreement, then it was a joint sale to the two, and

7 *

was in the nature of a partnership in the particular transaction, so that a purchase by one, and a delivery to one, would vest an interest in both.

The jury found the defendant guilty on the first count, and not guilty on the second.

The defendant moved for a new trial, on the ground of misdirection.

If the Court should be of opinion, that the directions to the jury were wrong, the verdict was to be set aside and a new trial granted ; otherwise, judgment was to be rendered on the verdict.

*March 30th.*    *Ward* for the defendant.    We contend, that the evidence proves that this was not a joint sale, but a sale to Hawes and a sub-sale by him to Lawrence ; the first sale was an executed, the second, an executory contract.  1 Com. on Contr. 298 ; *Coope v. Eyre*, 1 H. Bl. 37 ; *Hoare v. Dawes*, Dougl. 371. At auction sales, where several persons are each desirous of purchasing a portion of the goods offered for sale, it is often agreed, that one shall bid off the whole, and that the others shall take of him ; now it would be extremely inconvenient, if such a purchase should be held to be joint, thus making those liable for the price, who were not secured by the possession of the property.

If the defendant was ignorant of any connexion between Hawes and Lawrence in the purchase, this fact would have a material effect in determining whether the purchase was joint or not ; *Young v. Hunter*, 4 Taunt. 581 ; and this point should have been presented to the jury for their decision.

The jury were misled by the instruction, that this transaction was in the nature of a partnership between Hawes and Lawrence.    This instruction should have been qualified.    A partnership is very different from a joint purchase ; if there was a partnership between them, it would be immaterial whether both partners were present at the purchase or not.    The pur chasers were tenants in common, and not partners ; each could have sold his share, and no more.

The testimony of Lawrence as to his understanding of the contract, will prevail over any implication of law as to its na- ture ; and the jury should have been so instructed.

*Austin* (Attorney-General), for the commonwealth, cited
*Everett* v. *Tindall*, 5 Esp. 169 ; *Brembridge* v. *Campbell*,
5 Carr. & P. 186.

MORTON J. delivered the opinion of the Court. The in-
dictment alleges, that the defendant *sold* a part of a ticket to
Hawes and Lawrence. To maintain this allegation, it is ne-
cessary to prove a *joint* sale to both ; and a *sale to one*, even
if the other became afterwards interested in it, is not sufficient.
The defendant is only answerable for his own direct acts, and
cannot be affected by any others after the sale.

Was the original sale to Hawes and Lawrence, or to Hawes
alone ? Did the property immediately vest in both, or was
some subsequent act necessary to give Lawrence an interest
in the ticket ?

That Lawrence became the owner of part of the ticket, is
proved by the fact, that he received a part of the prize drawn
by it, and is not disputed. The report expressly states, that
there was no communication between Hawes and Lawrence
after the delivery to Hawes and before the drawing of the
prize and the receipt of the money. There was no subse-
quent contract. Lawrence's interest in the ticket, therefore,
must have vested by the original sale. But it is not necessa-
ry to rely upon this summary argument. A further examina-
tion of the case will bring us to the same result. Hawes and
Lawrence agreed before the purchase, to make it. Each fur-
nished his proportion of the money to pay for it. The ticket
was actually paid for by both, and it is wholly immaterial
whether the *identical* money advanced by each was paid to
the defendant, or was received by one and the payment made
from his own funds.

Indeed, if several of these ingredients were wanting, it still
would be a *joint sale*. If Lawrence had advanced no money,
and even if he had not been present, still the purchase in pur-
suance of a previous agreement, would have been a *joint act*
and have vested the property in both, leaving the one a debtor
to the other for his share of the purchase money. It so far
partook of the nature of a partnership, that one might act for
both, might make the contract for the purchase, might receive
the delivery, and, had it been on credit, might have bound both
by his contract, express or implied, for the consideration.

The payment was clearly a *joint* act, whether the identical money was used for the purpose, or some other substituted. And the seller's knowledge or ignorance of the *previous agree ment* cannot change the nature of the transfer.  He having re ceived payment, it is immaterial to him whether the sale was made to *one* or *two ;* and it did not in the slightest degree af- fect the criminality of the act.  The property immediately vested in both.  It was in law a *joint sale.*  And it was prop- er and necessary so to describe it in the indictment.

This view is supported by general principles, is perfectly consistent with all the cases, and clearly within *Everett* v. *Tin- dall,* 5 Esp. 169.  The only case having the least appear- ance of supporting a contrary doctrine is that of *Young* v. *Hunter,* 4 Taunt. 581.  But in the case at bar, the principal element of that judgment is wanting.  There is no sub-sale. The original agreement was for a *joint* purchase, and there is no reason to suppose that *one* was to purchase the *whole,* and the *other* afterwards to purchase a part of him.

On the whole, we think the instructions were clearly right and that the motion for a new trial must be overruled